**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THOMAS D'AQUIN** *et al.* | * | **CIVIL ACTION** |
| | * | |
| **Plaintiffs,** | * | **NO. 2:15-cv-01963** |
| **versus** | * | |
| | * | **HON. HELEN G. BERRIGAN** |
| **STARWOOD HOTELS and** | * | |
| **WORLDWIDE PROPERTIES INC** | * | **HON. SALLY SHUSHAN** |
| *et al.* | * | |
| | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

Defendants, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") (incorrectly identified as "Starwood Hotels and Worldwide Properties, Inc."); The Hanover Insurance Company ("Hanover"); and Adam Aron, Thomas Mangas, Alan Schnaid, Martha Poulter, Simon Turner, Patrick Jordan, Don Norwood, Nefertiti France, and Colleen Ewert,[1] respectfully submit the following Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Claims Pursuant to Fed. R. Civ. P. 12.

---

[1] Mr. Aron, Mr. Mangas, Mr. Schnaid, Ms. Poulter, Mr. Turner, Mr. Jordan, Mr. Norwood, Ms. France, and Ms. Ewert are referred to collectively as the "Individual Defendants."  Starwood, Hanover, and the Individual Defendants are referred to as "Defendants."

**Defendants categorically deny each and every allegation of Defendants' purported discrimination and/or other wrongdoing** set forth in Plaintiffs' Complaint (Doc. No. 1) and Amended Complaint (Doc. No. 6).   Plaintiffs' claims are patently incorrect and will be exposed as such in due course; however, in an attempt to bring this matter to an expeditious resolution and to avoid the costs of litigation, Defendants have opted to file the instant motion to dismiss Plaintiffs' claims, with prejudice and in their entirety.   Plaintiffs' Complaint and Amended Complaint are legally and factually defective and should be dismissed for any of the reasons set forth herein.

*     *     *

This is one of at least seven lawsuits filed this year in this District by Thomas d'Aquin, a *pro se* litigant proceeding *in forma pauperis*.   This suit, as with the others Mr. d'Aquin has filed, alleges purported instances of racial discrimination and seeks monetary damages on the basis of same.[2]

---

[2] Specifically:

- Civil Action No. 2:15-cv-02842, *d'Aquin v. Touro Infirmary, et al*., at Doc. No. 1, alleging that defendants did "not give proper medical care by discriminating against plaintiff because of the race and ethnicity of his spouse and the fact they are an interracial couple."  Notably, Magistrate Judge Wilkinson denied Plaintiff's application to proceed *in forma pauperis*, finding that "Plaintiff has sufficient cash to pay the filing fee and his application establishes that he has no debts, dependents, living expenses or financial obligations of any kind."  (*See* Doc. No. 3.)

- Civil Action No. 2:15-cv-00761, *d'Aquin v. Norris et al*., at Doc. No. 1 p. 2, alleging a "Civil Conspiracy of Violation of Civil Rights";

- Civil Action No. 2:15-cv-001755, *d'Aquin v. McElraevey et al*., at Doc. No. 1 p. 2, alleging that "Defendants have violated our rights in a Federal Conspiracy to violate Civil Rights Act of 1964…";

- Civil Action No. 2:15-cv-2524, *d'Aquin v. Kramer et al.*, at Doc. No. 1 p. 1, alleging "violation of both the Fifth and Fourteenth Amendments and the Civil Rights Laws of 1871 and 1961…";

- Civil Action No. 2:15-cv-00634, *d'Aquin v. Mutual of Omaha et al.*, at Doc. No. 1 at p. 2 ¶ 5. Although the complaint is "largely incoherent" as was noted by Magistrate Judge Knowles, *see* Doc. No. 6 at p. 3, it appears as though Mr. d'Aquin alleged insurance fraud and discriminatory/racist treatment by the Louisiana Department of Insurance and others.

Defendants deny all of Plaintiffs' allegations and recite those allegations herein solely for purposes of assisting the Court in resolving this Motion to Dismiss.  Subject thereto, Mr. d'Aquin alleges that he and a female travel companion, Esther Kelly (Ms. Kelly and Mr. d'Aquin are collectively referred to herein as "Plaintiffs") experienced racist/discriminatory treatment after Ms. Kelly injured her ankle during an undated hotel stay in Memphis, Tennessee. The basis for Plaintiffs' complaint appears to be that the hotel did not act promptly in helping Ms. Kelly obtain treatment for her injuries, and allegedly did not "comp" the room she and Mr. d'Aquin had rented.  (*See,* Doc. Nos. 1, 6 at pp. 2-3.)

On the basis of the foregoing, Plaintiffs have named Starwood, purportedly in its capacity as owner of the hotel at issue (which is denied), and certain of its corporate officers and employees -- none of whom are the subject of any allegations contained in Plaintiffs' Complaint or Amended Complaint -- as defendants.  Plaintiffs have also named The Hanover Insurance Company, as well as Ms. France and Ms. Ewert in their alleged capacities as adjusters employed by Hanover.

Defendants now move to dismiss all of Plaintiffs' claims, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), as Plaintiffs have failed to plead facts that, even if proved to be true, would state a claim for relief.  In doing so, Defendants reiterate that they deny each and every allegation contained in Plaintiffs' complaints and emphasize that they are simply seeking to dispose of this suit in the most efficient way possible.  Defendants also seek the dismissal of Mr. d'Aquin's claims pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that he has not alleged that he sustained any direct injury giving rise to a justiceable claim against Defendants.  Finally, the Individual Defendants also move to dismiss the claims against them on the grounds that they are

---

- Civil Action No. 2:15-cv-02637, *d'Aquin v. Rodriguez, et al.*, at Doc No. 1 at ¶ 1, alleging that "discriminat[ion] against the plaintiff because of the race and ethnicity of his spouse.").

not subject to personal jurisdiction in this Court, and/or on the basis of insufficient service of process.  Defendants' motion should be granted for the reasons set forth below.

## I.   MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Plaintiffs' "Amended Complaint" asserts that "[t]he Defendants have and are working in a conspiracy to violate the Civil Rights Act of 1964 and Protections, Hate Crimes Protections Act of 2009 and being denied Life, Liberty and the Pursuit of Happiness."  (Doc. 6 at p. 2). Plaintiffs ask to be awarded "Sixty Million Dollars from each Defendant" on the basis of these claims.  However, even affording Plaintiffs the wide latitude generally given to *pro se* litigants, Plaintiffs have failed to plead facts giving rise to a cause of action for the following reasons.

### A.   Legal Standard

To survive a motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939 (2009); *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 129 S. Ct. at 1940.  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.*

Against this backdrop, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 127 S. Ct. at 1969.  This requires identification of both some cognizable legal theory <u>as well as</u> specific factual allegations supporting the elements of such a claim.  *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 544-48 (3d ed. 2004).  The law is clear that threadbare recitals of the elements of a cause of action do not

4

suffice.  *Iqbal*, 129 S. Ct. at 1949.  Rather, the plaintiff must plead specific factual allegations

that, accepted as true, raise a right to relief "above the speculative level" *Twombly,* 127 S. Ct. at

1965 (citations and footnote omitted); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.

2007).  Although well-pleaded facts are accepted as true, courts "are not bound to accept as true

a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986),

nor must they accept "'unwarranted factual inferences,'" *Arias-Benn v. State Farm Fire & Cas.*

*Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citation omitted).

The Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is

based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which
> are obviously insupportable. On the contrary, if as a matter of law
> it is clear that no relief could be granted under any set of facts that
> could be proved consistent with the allegations, ... a claim must be
> dismissed, without regard to whether it is based on an outlandish
> legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (quotation

marks and internal citations omitted). When a complaint fails to satisfy these principles, "this

basic deficiency should be exposed at the point of minimum expenditure of time and money by

the parties and the court." *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir.2007) (quotation

marks and alterations omitted).

### B.    Plaintiffs Complaint Does Not State A Cause of Action Under the Civil Rights Act of 1964

Plaintiffs allege certain discriminatory acts in violation of unspecified provisions of the

Civil Rights Act of 1964 ("Civil Rights Act").  Although Defendants deny Plaintiffs' claims in

their entirety, those allegations must be taken as true for purposes of resolving this motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See, e.g.*, *Cooper v. Pate*, 84 S. Ct. 1733, 1734

(1964).  Assuming Plaintiffs' allegations to be true, the only provision of the Civil Rights Act that could potentially apply to Plaintiffs' claims, which describe purported discriminatory treatment at a hotel, is Title II of the Civil Rights Act, entitled "Injunctive Relief Against Discrimination in Places of Public Accommodation."[3]  *See* 42 U.S.C.A. § 2000a.  That section provides as follows:

> (a) Equal access
>
> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C.A. § 2000a (West).

While disputed, Plaintiffs' allegations nonetheless fail to state a claim for relief under this Act on several bases.

> ### 1.     Title II of the Civil Rights Act of 1964 Does Not Allow for Monetary Damages

As an initial matter, "[a] plaintiff seeking to enforce the substantive provisions of § 2000a can obtain only injunctive relief. *See* 42 U.S.C. § 2000a–3(a); *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402 (1968).  "When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."

---

[3] There are 10 titles contained in the Civil Rights Act.  *See generally* Public L. 88-352, enacted July 2, 1964, 78 Stat. 241.  In this case, the other 9 are clearly inapplicable:  Title I pertains to voter registration, *see* 42 U.S.C. § 1971 *et seq.*; Title III prohibits governmental entities from denying access to public facilities, *see* 42 U.S.C. § 2000b *et seq.*; Title IV concerns desegregation of public schools, *see* 42 U.S.C.A. 2000c *et seq.*; Title V creates certain frameworks governing the federal Civil Rights Commission, *see* 42 U.S.C.A. § 1975a *et seq.*; Title VI precludes discrimination by government agencies that receive federal funds, *see* 42 U.S.C.A. § 2000d *et seq.*; Title VII provides for equal employment opportunities, *see* 42 U.S.C.A. § 2000e *et seq.*; Title VIII concerns voting statistics, *see* 42 U.S.C.A. § 2000f *et seq.*; Title IX pertains to Community Relations Services, *see* 42 U.S.C.A. § 2000g *et seq.*; and Title X establishes certain "Miscellaneous Provisions" concerning enforcement of the foregoing, *see* 42 U.S.C.A. § 2000h *et seq.*

*Newman*, 390 U.S. 400, 401-02, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265 (1968) (internal citation omitted).  In this case, Plaintiffs seek only monetary damages in the amount of "Sixty Million Dollars from each Defendant," and do not seek injunctive relief.  (*See* Doc. No. 6 at p. 11.)  Accordingly, Plaintiffs' claims premised on the Civil Rights Act of 1964 should be dismissed.

2.      *Additionally, Plaintiffs Have Not Pleaded an Actionable*
        *Claim Under Title II of the Act*

The Fifth Circuit has recognized that dismissal of claims under the Civil Rights Act is appropriate where a plaintiff fails to plead facts sufficient to establish a violation thereof.  *Malik v. Continental Airlines, Inc.*, 305 Fed. Appx. 165, 169-70 (5th Cir. 2008) (plaintiff's failure to allege "any facts establishing a connection between Continental's actions and her racial and religious background" mandated dismissal of her claims under *Bell Atlantic Corp. v. Twombly*). District courts in the Fifth Circuit have dismissed discrimination claims brought by *pro se* litigants on this same basis.  *See, e.g.*, *Thomas v. Two Rivers Grocery & Mkt.*, 2012 WL 5496423, at *1 (E.D. Tex. October 18, 2012) (dismissing *pro se* plaintiff's complaint under Title II of the Civil Rights Act where the "complaint fail[ed] to allege sufficient facts to permit a reasonable inference" that the Act had been violated); *Adamore v. Southwest Airlines Corp.*, 2011 WL 6301398, *5 (S.D. Tex. Dec. 15, 2011) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  Plaintiff's Amended Complaint does not state facts from which the Court may infer that any constitutionally or statutorily proscribed discrimination occurred.").

Turning to the instant case, the Fifth Circuit has stated that a *prima facie* violation of Title II of the Civil Rights Act requires that (1) the plaintiff is a member of a protected class; (2) he/she attempted to contract for the services of a public accommodation; (3) he/she was

7

denied those services; and (4) the services were made available to similarly situated persons outside his/her protected class. *Fahim v. Marriott Hotel Services, Inc.*, 551 F. 3d 344, 350 (5th Cir. 2008).   In this case, Plaintiffs' claims, though disputed, fail to allege facts sufficient to establish these elements and their claim should be dismissed accordingly.

Notably, Plaintiffs do not allege that they "attempted to contract" for the services of a public accommodation and/or that they were denied such services.  Plaintiffs, therefore, cannot state a claim under Title II of the Act, which applies to <u>denials of access</u> to statutorily-defined places of "public accommodation."  *See id.*; *see also, Daniel v. Paul,* 395 U.S. 298, 307-08 (1969).  As the United States Supreme Court explained in *Daniel,* the overriding purpose of Title II was "to remove the daily affront and humiliation involved in discriminatory **<u>denials of access</u>** to facilities ostensibly open to the general public." 395 U.S. at 307–08 (Emphasis added.)  As support for this statement, *Daniel* cited President John F. Kennedy's statements to Congress concerning the "public accommodations" provisions of the proposed Civil Rights Act and emphasizing that "no action is more contrary to the spirit of our democracy and Constitution—or more rightfully resented by a Negro citizen who seeks only equal treatment—than **the barring** of that citizen from restaurants, hotels, theatres, recreational areas and other public accommodations and facilities." (Emphasis added.)  *Id*. at 306.

Here, paragraphs I – V of Plaintiffs' Amended Complaint make clear that Plaintiffs were in fact able to obtain a room at the hotel at issue, *i.e*. they were able to "contract for the services of a public accommodation" as required by *Fahim*.  *See,* 551 F. 3d at 350.   Accordingly, Plaintiffs do not – and cannot – allege that they were "denied" access to the hotel.  Instead, Plaintiffs' discrimination claims are premised on the length of time the hotel allegedly took to respond to Plaintiffs' request that the hotel call an ambulance on Plaintiffs' behalf (which request

may have been made via Twitter), and/or on the fact that "Defendants insisted that they [Plaintiffs] pay their hotel bill."  (*See,* Doc. Nos. 1, 6 at ¶¶ I-III.)     These claims, though contested for numerous reasons, do not constitute "denials of service" giving rise to a claim under Title II of the Civil Rights Act, and Plaintiffs' claims necessarily fail as a result.  *See, Fahim*, 551 F. 3d at 350.

Plaintiffs have failed to adequately plead the other elements of *Fahim* as well.  Indeed, even assuming, *arguendo*, that the actions attributed to the Defendants in this case did in fact qualify as a "denial" of services, Plaintiffs have not alleged any facts that, assumed to be true for purposes of this motion only, would establish that other hotel guests were treated differently, which is another element required to support their discrimination claim under *Fahim*.  *See id.*; *see also, Malik, Thomas, Ardmore, supra*.

Finally, and additionally and/or alternatively, **Mr. d'Aquin's claims** under the Act should also be dismissed because there is no allegation from which it may be inferred that he is a member of a "protected class" within the meaning of the Act.  *See, Perkins v. McDowell*, 2010 WL 5535812, at *3 (E.D. Tex. 12/16/10) (dismissing claim under Title XII of the Civil Rights Act where plaintiff failed to allege any facts showing she was a member of a protected class); *see generally, Fahim*, 551 F. 3d at 350.

Accordingly, Plaintiffs' claims for alleged violations of the Civil Rights Act of 1964 should be dismissed.

### C.   The Hate Crimes Protection Act of 2009 Is Not Available to Plaintiffs

Plaintiffs' Amended Complaint also asserts violations of the "Hate Crimes Protection Act of 2009."  (Doc. No. 6 at p. 2 and ¶ XVI.)     Plaintiffs appear to be invoking 18 U.S.C. § 249(a)(1), a criminal statute that "generally provides criminal penalties for intentionally

causing bodily injury to another person when the injury was motivated by the actual or perceived religion, race, color, national origin, gender, sexual orientation, gender identity, or disability of the victim." *Benitez v. Rumage*, 2011 WL 3236199, at *1 (S.D. Tex. July 27, 2011), citing *Glenn v. Holder,* 738 F.Supp.2d 718, 719–20 (E.D. Mich. 2010).  Defendants emphatically reject Plaintiffs' allegations; however, as the *Benitez* court found in dismissing a *pro se* litigant's attempt to bring claims under that Act, "the Hate Crimes Prevention Act does not provide for any civil cause of action."  *Id*, citing *Lee v. Lewis,* 2010 WL 5125327, at *2 (E.D.N.C. Oct.28, 2010). Accordingly, this claim should likewise be dismissed.

### D.    Plaintiffs' Claims for Alleged Deprivation of "Life, Liberty and the Pursuit of Happiness" Are Not Legally Cognizable

Plaintiffs also conclude that the conduct alleged to give rise to violations of the Civil Rights Act of 1964 and the Hate Crimes Protection Act also operated to deny Plaintiffs "Life, Liberty and the Pursuit of Happiness."  Affording Plaintiffs the benefit of all doubts to which they are entitled as *pro se* litigants, it appears they are attempting to assert violations of rights protected under the Fifth and/or Fourteenth Amendments to the Constitution.

While Defendants deny any mistreatment of Plaintiffs, these Amendments apply to governmental entities and individuals acting under color of law, only; alleged deprivation of these rights by a **private actor** does not give rise to a legally cognizable cause of action.  *See, e.g., Jackson v. Met. Edison Co.*, 95 S. Ct. 449, 453 (1974) (Fourteenth Amendment inapplicable as to private conduct); s*ee also, Morin v. Caire*, 77 F. 3d 116, 120 (5th Cir. 1996) (generally describing the scope of the Fifth and Fourteenth Amendments as applying to governmental actors) *and* 42 U.S.C.A. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

10

thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws….").  In this case Plaintiffs do not and cannot plausibly allege that any of the Defendants are a governmental entity or was acting under the color of law, and Plaintiffs' "life, liberty and pursuit of happiness" claims should therefore be dismissed as well.

E.    **Plaintiffs Have Not Stated A Claim Against Any of Starwood's Employees, Officers and/or Directors**

As noted above, Plaintiffs have also named Adam Aron, Thomas Mangas, Alan Schnaid, Martha Poulter, Simon Turner, Patrick Jordan, and Don Norwood as defendants herein. Ostensibly these individuals are named in their capacities as alleged employees, officers, and/or directors of Starwood; however, Plaintiffs' Complaint and Amended Complaint are wholly devoid of any allegations directed at these individuals that would explain their inclusion in the case.  This absence is fatal to Plaintiffs' claims.   Under the heightened pleading standards set forth by the Supreme Court in *Twombly* and its progeny, to state a claim for relief against these individuals, Plaintiffs "must plead specific factual allegations that, accepted as true, raise a right to relief 'above the speculative level.'"  *Twombly,* 127 S. Ct. at 1965 (citations and footnote omitted).   In this case, the complete absence of any allegations whatsoever against Mr. Aron, Mr. Mangas, Mr. Schnaid, Ms. Poulter, Mr. Turner, Mr. Jordan, and/or Mr. Norwood leaves these parties to guess as to the nature of the claims against them.   Such guesswork is a quintessential example of the "speculative" pleading forbidden by *Twombly*, and the claims against Mr. Aron, Mr. Mangas, Mr. Schnaid, Ms. Poulter, Mr. Turner, Mr. Jordan, and Mr. Norwood should likewise be dismissed on this additional basis.

F.    **The Claims Against Hanover and Its Adjusters Are Also Due to be Dismissed**

Plaintiffs have sued Hanover in its capacity as alleged liability insurer of the hotel at issue.  (*See, e.g.*, Doc. No. 6 at ¶ 7.)  Plaintiffs have also named Ms. France and Ms. Ewing as

11

defendants in their capacity as alleged Hanover claims adjusters.  (*Id.* at ¶¶ VIII-IX.)  The claims

against Hanover, Ms. France and Ms. Ewing are subject to dismissal for several reasons.

> 1.    *Plaintiffs Have Failed to Assert Legally Cognizable Claims*

To the extent the claims against Hanover, Ms. France and/or Ms. Ewing are premised on

the alleged discriminatory acts discussed above, those claims fail for the reasons already

addressed.  *See* Sections I.A-D, *supra*.

Alternately, to the extent Plaintiffs attempt to plead independent Civil Rights, Hate

Crimes, or Due Process violations as to Hanover, Ms. France and/or Ms. Ewing based on their

alleged handling of Plaintiffs' "claims," this theory also fails as a matter of law.  As discussed

above, the Hate Crimes Protection Act and Due Process arguments do not create cause of action

enforceable by Plaintiffs herein.  Moreover, the Civil Rights Act (1) only affords injunctive

relief, and (2) only creates a private right of action to the extent a member of a protected class is

denied the services of a place of public accommodation.  *See, e.g.*, *Fahim*, 551 F. 3d at 350.  The

handling of an insurance claim is not a "public accommodation," and accordingly, any causes of

action Plaintiffs may assert against Hanover and/or its adjusters for damages arising out of their

handling of Plaintiffs' claim do not fall within the purview of the Civil Rights Act and should

likewise be dismissed.

> 2.    *Plaintiff Has Not Alleged Facts Sufficient to Bring a Direct Action Claim Against Hanover*

Plaintiffs' claims as to Hanover should also be dismissed on the independent ground that

Plaintiffs have not alleged facts sufficient to maintain a right of direct action against Hanover.

The Louisiana Direct Action Statute, codified at La. R.S. 22:1269, "extends a conditional

right to file suit, to some parties under some circumstances."  *Perkins v. Carter*, 30 So.3d 862,

866 (La. App. 5 Cir. 2009).  (Emphases added.)  An injured party obtains a right of action

against another person's insurance company only if all the requirements of the Direct Action Statute have been fulfilled.  *Id*.  Plaintiffs bear the burden of proving they have the right to assert a direct action against Hanover, and Hanover is entitled to dismissal of the claims against it when the requirements of the Direct Action Statute have not been met.  *See, id.* ("The plaintiff must establish a right of action through the Direct Action Statute which was enacted to give special rights of action to injured tort victims.")

Relevant here is subsection (B)(2) of the Direct Action Statute, which provides that "[t]his right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, **provided the accident or injury occurred within the state of Louisiana.**"  *See*, La. R.S. 22:1269(B)(2).  The Louisiana Supreme Court has interpreted this language as follows:

> Hence, the right of direct action against a liability insurer in a Louisiana court is expressly conferred by statute, but only under certain conditions: (1) the accident occurred in Louisiana, or (2) the policy was issued or delivered in Louisiana. In the present action, neither condition is met; therefore, appellants have no right of action against Allstate under La. R.S. 22:655[now 22:1269]. Any further extension of the statute is a legislative function. This court cannot disregard the plain and unambiguous language of the statutory provision.

*Esteve v. Allstate Ins. Co.*, 351 So.2d 117, 120 (La. 1977) (no right of action under the Direct Action Statute for Louisiana resident's claim on automobile accident that occurred in another state); *see also, Diamond v. Progressive Sec. Ins. Co.*, 934 So.2d 739, 742 (La. App. 1 Cir. 2006) ("To sue a liability insurer directly under the Louisiana Direct Action Statute, the accident or injury must have occurred in Louisiana or the policy must have been written or delivered in Louisiana.").

13

Here, putting aside the substantive defects in their claimed causes of action, Plaintiffs have also not pleaded any facts that taken as true would satisfy one of the three bases for maintaining a right of direct action against Hanover. *See, e.g., Esteve*, 351 So.2d at 120; *Landry v. Travelers Indemn. Co.*, 890 F.2d 770, 772 (5th Cir. 1989) (affirming dismissal of claim because none of the "three limited instances" for maintaining a direct action was present); *Harcrest Int'l v. M/V Keeling*, 1988 WL 58262, at *8-9 (E.D. La. May 26, 1988) (where goods sustained fire damage in Mississippi while in transit from Korea to Louisiana, plaintiff could not assert a claim under the Direct Action Statute); *Guess v. Read*, 290 F.2d 622, 625 (5th Cir. 1961) (widow had no right of direct action where husband was killed in a helicopter crash in the Gulf of Mexico outside of Louisiana territorial waters); *Diamond,* 934 So.2d at 742 (auto being principally garaged in Louisiana was not sufficient to state claim under the Direct Action Statute where auto accident did not occur in Louisiana).

       3.     *Louisiana Law Does Not Recognize an Independent Cause of Action Against Ms. France and/or Ms. Ewing in their Alleged Capacity as Hanover Adjusters*

With respect to the alleged claims against the Hanover adjusters, Ms. France and Ms. Ewing, in addition to the substantive flaws in Plaintiffs' legal theories discussed *supra*, dismissal is also appropriate because Louisiana courts have consistently held that no cause of action lies in tort against an insurance adjuster. *See, e.g.*, *Lewis v. Republic Fire & Cas. Ins. Co.*, 2015 WL 3654560, at *5 (W.D. La. June 10, 2015); *McKee v. Hanover Ins. Co.,* 2007 WL 837247, at *2 (W.D. La. Mar. 15, 2007); *Westmoreland v. Wright Nat. Flood,* 2014 WL 1343387, at *2 (M.D. La. April 3, 2014).

**G.     This Action Should Be Dismissed With Prejudice Because
         <u>Amendment is Futile</u>**

Plaintiffs' claims are vexatious and factually unsupported.  However, Defendants need not get that far, as Rule 12(b)(6) requires dismissal whenever – as here – a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, ... a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke,* 490 U.S. at 327.   When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier,* 503 F.3d at 401.  Dismissal with prejudice may be ordered where amending the petition would be a futile act.  *See, e.g., Crawford v. Wal-Mart Stores, Inc.*, 2011 WL 3206196, *3 at n. 8 (M.D. La. 7/27/11) (citing authorities rejecting amendment as futile where plaintiff is unable to allege additional facts that would cure the grounds for dismissal).

Here, as set forth above, Plaintiffs assert three claims, two of which are non-existent (*i.e.*, their attempt to assert violations of the Hate Crimes Protection Act, 18 U.S.C. § 249(a)(1), and claims for alleged deprivations of "Life, Liberty and the Pursuit of Happiness"), and a third that is foreclosed by the allegations in their own pleadings (*i.e.*, Title II of the Civil Rights Act of 1964).  Plaintiffs can plead no set of facts that could cure these deficiencies; these are legal defects in their theory of the case that will remain regardless of amendment.  As such, amendment is futile and their claims should be dismissed with prejudice and in their entirety.

## II.     MR. D'AQUIN'S CLAIMS SHOULD ALSO BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1)

In the event the Court denies Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) in whole or in part, Defendants offer the alternative argument that dismissal of Mr. d'Aquin's claims is also appropriate pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs allege that Ms. Kelly sustained injury on account of the acts of supposed "discrimination" described in their complaint, and appear to further allege that these supposed acts were motivated because Plaintiffs are an interracial couple.  (*See, e.g.*, Doc. No. 6 at ¶¶ VI, XI.)

However, Plaintiffs do not allege any direct injury on the part of Mr. d'Aquin individually, and as such, he does not have standing to maintain a claim on the basis of the acts alleged in Plaintiffs' complaints.  *See, e.g*., Fed. R. Civ. P. 12(b)(1); *see also, Finch v. Miss. St. Med. Ass'n*, 585 F. 2d 765, 775-76 (5th Cir. 1978) (white doctors did not have standing to assert discrimination against black physicians in the absence of any direct injury to themselves), modified on other grounds, 594 F. 2d 163; and *Winbush v. Hilton*, 2008 WL 5582437 (W.D. La. June 2, 2008) (citing *Finch* for the proposition that "plaintiffs do not have standing to raise a claim of discrimination against others in the absence of any direct injury to themselves. Questions of injury to the general public, in the constitutional sense, are not to be resolved by the judiciary.")

## III.    THE INDIVIDUAL DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

While Defendants believe that the pleading and other deficiencies described above are sufficient to warrant dismissal of Plaintiffs' claims in their entirety, in the event the Court disagrees (in whole or in part), the Individual Defendants respectfully move for dismissal

pursuant to Fed. R. Civ. P. 12(b)(2) on the alternate grounds that the Individual Defendants are not subject to personal jurisdiction before this Court.

A.    **Legal Standard**

Personal jurisdiction is "an essential element of the jurisdiction of a district ... court," without which the court is 'powerless to proceed to an adjudication." *Ogden v. GlobalSantaFe Offshore Servs.*, 2014 WL 3489754 (E.D. La. 7/14/14).  The party seeking to invoke the power of the court bears the burden of establishing personal jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012).

As reflected in the attached declarations, none of the Individual Defendants are residents of the State of Louisiana.[4]  (*See,* Exhibits A-I at ¶ 1.)  Personal jurisdiction over a non-resident may only be asserted if (1) the law of the forum state provides for the assertion of such jurisdiction; and (2) the exercise of jurisdiction under state law satisfies the Due Process Clause of the Fourteenth Amendment.  *See, e.g.*, *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F. 3d 331, 336 (5th Cir. 1999).  The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits, and therefore the inquiry is whether jurisdiction comports with federal constitutional guarantees. *Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir .2010) (*citing Walk Haydel & Assocs. v. Coastal Power Prod*. Co., 517 F.3d 235, 242–43 (5th Cir. 2008)).

There are two bases under which the Court may obtain jurisdiction over a non-resident defendant.  The first, specific jurisdiction, requires a plaintiff to show that 1) there are sufficient, *i.e.*, not random, fortuitous, or attenuated, pre-litigation connections between the non-resident defendant and the forum; 2) the connection has been purposefully established by the defendant;

---

[4] On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the Court is not restricted to reviewing the pleadings and may properly consider affidavits and other appropriate methods of discovery.  *See, e.g*., *Goodwin v. Hous. Auth. of New Orleans*, 2013 WL 3874907 (E.D. La. 7/25/13).

17

and 3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. *Pervasive Software*, 688 F.3d at 221.  This "minimum contacts" inquiry is fact intensive and while no one element is decisive, the touchstone of the analysis is whether the defendant's conduct shows that he could "reasonably anticipate being haled into court" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).  Consistent therewith, a defendant may not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id*. (*quoting Electrosource, Inc. v. Horizon Battery Techs., Ltd*., 176 F.3d 867, 871–72 (5th Cir. 1999)).

The second, general jurisdiction, does not hinge upon the contacts out of which the cause of action arose. *Big Easy Energy, LLC v. Conglomerate Gas,* 2010 WL 1038225, at 2 (E.D. La. Mar. 17, 2010), *citing Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003) (*quoting Cent. Freight Lines v. APA Transport Corp*., 322 F.3d 376, 381 (5th Cir. 2003)). Instead, it requires a showing of substantial, continuous, and systematic contacts between a defendant and a forum. *Johnston v. Multidata Systems Intern. Corp*., 523 F.3d 602, 609 (5th Cir. 2008); *Bowles v. Ranger Land Systems, Inc.*, 527 Fed. Appx. 319, 321 (5th Cir. 2013).  The Fifth Circuit, noting the "reduced role" played by general jurisdiction, has warned that the general jurisdiction standard is "a difficult one to meet." *McFadin,* 587 F.3d at 755 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2854 (2011).)

**B.     The Court Lacks Specific or General Jurisdiction over the Individual Defendants**

As set forth below, Plaintiffs have not alleged a factual basis for the Court to exercise specific or general jurisdiction over the Individual Defendants.

Specific jurisdiction is a claim-specific inquiry that focuses on the relationship between the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia v. Hall,* 104

18

S. Ct. 1868, 1872 (1984).   In this case, Plaintiffs' pleadings are wholly devoid of any allegation(s) from which this requisite factual nexus could be inferred.   All of the actions giving rise to Plaintiffs' claims are alleged to have occurred outside of Louisiana:

- Plaintiffs allege that they were guests at a hotel in Memphis, Tennessee;

- while staying at that hotel, Plaintiffs claim they contacted the hotel to request medical treatment for injuries allegedly sustained by Ms. Kelly;

- the hotel did not respond promptly enough; and

- then required Plaintiffs to pay for their room at the close of their stay.

(*See* Doc. Nos. 1, 6 at pp. 2-3.)

In contrast, there are no allegations that the Individual Defendants undertook any action in Louisiana.   Moreover, as reflected in the attached declarations (*see,* Exhibits A – I), none of the Individual Defendants reside in Louisiana or otherwise maintain the requisite "minimum contacts" with Louisiana such that they could reasonably anticipate being haled into court in the jurisdiction.   *See, McFadin,* 587 F.3d at 759.

Indeed, with respect to the claims against Starwood, Hanover and/or the Individual Defendants, the only alleged Louisiana connection is that Mr. d'Aquin resides in New Orleans.[5] The law is clear that the "unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State .... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 222 (5th Cir. 2012).   In the absence of such a showing, there is no basis for this Court to exercise personal jurisdiction over the Individual Defendants.

---

[5] Plaintiffs' Amended Complaint suggests that Ms. Kelly now resides in England.  (*See* Doc. No. 6 at p. 10 ¶¶ XIX-XX.)

Moreover, pursuant to the "fiduciary shield" doctrine, the Court may not exercise jurisdiction over the Individual Defendants solely on the basis of any activities they may have conducted as representatives of a corporation that is subject to personal jurisdiction in the Court. *See, Miller v. Am. General Fin. Corp.*, 2002 WL 2022536 (E.D. La. 9/4/02).  Rather, the Court must decide whether to exercise personal jurisdiction over the Individual Defendants on the basis of their personal contacts with the State of Louisiana.  *See General Retail Svcs., Inc. v. Wireless Toyz Franchise, L.L.C.*, 255 Fed. App'x 775, 795 (5th Cir. 2007).  Here, as set forth above and in the attached declarations, the Individual Defendants have essentially no personal contacts with the State of Louisiana.

The attached declarations likewise preclude a finding that any of the Individual Defendants have "substantial, continuous, or systematic" contacts with Louisiana as is required to establish general personal jurisdiction.  As noted above, Plaintiffs bear a "heavy burden" in attempting to establish general jurisdiction, as it requires a showing of "extensive contacts between a defendant and a forum." *McFadin,* 587 F.3d at 755.

Here, none of the Individual Defendants are now or have ever:

1.  been a domiciliary of Louisiana;
2.  maintained an office or other place of business for themselves in Louisiana;
3.  had an agent for service of process in Louisiana;
4.  had a mailing address or telephone listing in Louisiana;
5.  had bank accounts or other assets in Louisiana;
6.  filed tax returns in Louisiana;
7.  advertised or otherwise solicited business for themselves in Louisiana;
8.  derived substantial revenue from services or things used or consumed in Louisiana;
9.  owned or leased any movable (personal) or immovable (real) property in Louisiana; and/or
10. been sued in or made a general appearance in Louisiana.

(*See generally,* Exhibits A – I.)

This evidence overwhelmingly establishes that there is no basis for the Court to find the "substantial, continuous, or systematic" contacts with Louisiana necessary for the exercise of general personal jurisdiction here.

Accordingly, there is no basis for the Court to exercise specific or general personal jurisdiction over the Individual Defendants, and the claims against them should be dismissed under Fed. R. Civ. P. 12(b)(2).

## IV. INSUFFICIENT SERVICE ON THE INDIVIDUAL DEFENDANTS

Finally, and only as an alternative argument in the event the Court denies Defendants' 12(b)(6) and/or 12(b)(1) motions, the Individual Defendants also move to dismiss for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(4)-(5).  *See, Marshall v. O'Conner*, 1991 WL 61744, at *1 (E.D. La. 1991) ("Although there is merit to [defendant's] claims of insufficiency of service of process and lack of personal jurisdiction, there is no need to reach these defenses because I find that the complaint does not state a claim upon which relief can be granted.")

Fed. R. Civ. P. 4(e) governs service of individuals within a judicial district of the United States.   None of the Individual Defendants have been served in accordance with this Rule, which permits service by:

*** 

(1)   following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)   doing any of the following:

(A)   delivering a copy of the summons and of the complaint to the individual personally;

(B)   leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C)     delivering a copy of each to an agent authorized by
appointment or by law to receive service of process.

Plaintiffs have filed several summons returns reflecting Plaintiffs' attempts to serve certain of the Individual Defendants.  (*See,* Doc. Nos. 11-13, 15-17, and 19; to date returns have not been filed with respect to Mr. Jordan or Mr. Norwood.)  As reflected therein, each was purportedly served via Certified Mail at the business addresses pertaining to Starwood and Hanover.  (*See* Docs. No. 11, 12, 15, 17 and 19, reflecting mailing to "Starwood, One Star Point, Stamford, Connecticut" and Doc. Nos. 13 and 16, reflecting mailing to "Hanover insurance (sic)," 440 Lincoln St., Worcester, MA.)

None of these summonses were properly served upon the Individual Defendants. Fed. R. Civ. P. 4(e), which incorporates Louisiana law regarding service under subsection (e)(1) and also sets forth its own framework in subsection (e)(2), does not allow for mailing to what the Plaintiff believes to be an individual's place of employment.  *See, e.g.*, *Collier v. Landry*, 115 So. 3d 31, 33 (La. App. 5. Cir. 2013) ("a valid long-arm service of process cannot be effected on a defendant by sending a certified copy of the citation and petition to defendant's place of employment by certified mail"); *see also,* Fed. R. Civ. P. 4(e)(2)(A)-(C).  Moreover, none of the Individual Defendants reside at the address listed on their respective summons, nor have they appointed an agent for service of process as those addresses.  (*See* Exhibits A-I at ¶¶ 11.) Accordingly, the Individual Defendants also move to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(4)-(5), which provides for dismissal for insufficient process/insufficient service of process, respectively.

## V.   <u>CONCLUSION</u>

Wherefore, for the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' claims, with prejudice and in their entirety, with each party to bear his or its own costs, and for all other relief the Court deems appropriate.

Respectfully submitted,

*/s/Kristopher T. Wilson*

**Kristopher T. Wilson, La. Bar No. 23978**
**Kristopher Redmann, La. Bar No. 18397**
**Daniel Centner, La. Bar. No. 33055**
**LUGENBUHL, WHEATON, PECK, RANKIN &**
**HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone:    (504) 568-1990
Facsimile:    (504) 310-9195

*Attorneys for Defendants Starwood Hotels &*
*Resorts Worldwide, Inc.; The Hanover Insurance*
*Company;  and Adam Aron, Thomas Mangas,*
*Alan Schnaid, Martha Poulter, Simon Turner,*
*Patrick Jordan, Don Norwood, Nefertiti France,*
*and Colleen Ewert*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of July, 2015, a copy of the foregoing has been served upon all counsel of record in this action via the Court's CM/ECF system, and/or by mailing a copy via Certified Mail to all *pro se* litigants at their address of record.

*/s/ Kristopher T. Wilson*
Kristopher T. Wilson